IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-293

No. COA21-433

Filed 3 May 2022

McDowell County, No. 18CRS052216

STATE OF NORTH CAROLINA

v.

AMBER LYNN AMATOR, Defendant.

Appeal by Defendant from judgment entered 16 February 2021 by Judge J. Thomas Davis in McDowell County Superior Court. Heard in the Court of Appeals 8 February 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Donna B. Wojcik, for the State.*

*Sharon L. Smith for the Defendant.*

DILLON, Judge.

¶ 1        Defendant Amber Lynn Amator appeals from a judgment finding her guilty of trafficking in methamphetamine. She was convicted based on the discovery of drugs found in her car during a traffic stop. On appeal, she challenges the validity of that stop.

I. Background

¶ 2        On 30 December 2018, a police officer stopped Defendant's vehicle for what he

believed to be a license plate renewal sticker violation. The officer also recognized Defendant's car as a vehicle he had attempted to stop weeks earlier. After discovering that another passenger had an outstanding warrant for arrest, a second police officer arrived with a K9. The K9 alerted on the car, and the officers searched the vehicle's interior. The search revealed several bags of methamphetamine. Defendant claimed one bag of methamphetamine amounting to 48.88 grams.

¶ 3        Defendant was charged with several drug offenses, as well as with improperly placing the renewal sticker on her license plate. Defendant moved to suppress the evidence obtained during the search of her vehicle. The trial court denied Defendant's motion, and Defendant subsequently pleaded guilty to trafficking in methamphetamine. The State dismissed Defendant's remaining charges. Defendant received a fine and an active sentence of seventy (70) to ninety-three (93) months. Defendant appealed to our Court.

## II. Analysis

¶ 4        Defendant argues that the trial court erred in denying her motion to suppress, contending that the officer did not have reasonable suspicion to initiate the stop based on an alleged misplacement of her renewal sticker. We disagree.

¶ 5        The question before us is whether the trial court had reasonable suspicion that Defendant committed a crime based on the placement of the renewal sticker on her license plate. We review a motion to suppress to determine "whether the trial judge's

underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Unchallenged findings of fact are binding on appeal. *State v. Sparks*, 362 N.C. 181, 185, 657 S.E.2d 655, 658 (2008).

¶ 6    In the years prior to Defendant's arrest, the DMV Commissioner sent out to each vehicle owner two stickers with each vehicle registration, one with the month and one with the year. At the time of Defendant's arrest, our Administrative Code instructed that the "month and year stickers shall be displayed on the plate in the correct position[.]" 19A N.C.A.C. 3C.0237 (2018).

¶ 7    Sometime before the time of Defendant's arrest, the DMV Commissioner had stopped sending two separate stickers with each registration and began sending out a *single* month/year registration renewal sticker. The registration card accompanying the single sticker instructed drivers to place the sticker on the upper *right* corner of the license plate. The Commissioner, however, did not immediately amend the Code provision to recognize the change.[1]

¶ 8    When Defendant received her sticker and registration card, she placed the

---

[1] This Code provision was updated in 2021 to reflect single month/year stickers: "The single month and year sticker shall be displayed on the plate in the upper right-hand corner." 19A N.C.A.C. 3C.0237 (2021).

sticker in the upper *left* corner of her plate.  Defendant was later stopped by an officer who believed that she was in violation of N.C Gen. Stat. § 20-66(c) (2018), which simply requires that the single registration renewal sticker "must be displayed on the registration plate it renews in the place prescribed by the Commissioner[.]"

¶ 9    Therefore, the issue before us does not concern whether there was sufficient evidence that Defendant was in violation of that statute.  Rather, the issue is whether the officer *reasonably believed* Defendant was violating that statute to justify the stop that led to the discovery of the methamphetamine.  Defendant argues that there could be no reasonable belief because neither the statute nor the Code provision in effect at the time of the stop stated where a single month/year sticker needed to be placed on one's license plate.  Here, even assuming that the officer was not correct in his interpretation of the law, we conclude that any mistake made by the officer was reasonable.

¶ 10    Regarding the officer's belief, the trial court found that:

> 1. [The officer] understood that the sticker should be on the upper right side of the plate.  He based his understanding on the language in his "Law Enforcement Officers Quick Reference Statute Guide" referring to [N.C. Gen. Stat. § 20-66(c)] (State's Exhibit 1) and the information provided on the back of North Carolina vehicle registration cards (State's Exhibit 2), both indicating that the month/year tag should be placed on the upper right side of the license plate.

¶ 11        Section 20-66(c) requires drivers to place their stickers on their license plates in a manner prescribed by the Commissioner of the DMV. It is true, as Defendant argues, that the Code was silent on the issue of placement of the single sticker at the time of her arrest. But the registration card received by Defendant did contain the instruction that a single sticker be placed in the upper right-hand corner. And there is a statute, which neither party cited, which states that it is the Commissioner's responsibility to create and provide the registration card received with the sticker. N.C. Gen. Stat. § 20-41 ("The Commissioner shall provide suitable forms for . . . registration cards . . . requisite for the purpose of this Article[.]").

¶ 12        Of course, our conclusion might be different if there was a controlling decision stating that the information on the registration card cannot support a prosecution under Section 20-66(c). But there is no such decision in our jurisprudence. *See State v. Eldridge*, 249 N.C. App. 493, 499, 790 S.E.2d 740, 744 (2016) (noting jurisdictions requiring the "absence of settled caselaw interpreting the statute at issue in order for the officer's mistake of law to be deemed objectively reasonable").

¶ 13        The United States Supreme Court held in *Heien v. North Carolina* that reasonable suspicion can arise from an officer's mistake of law, so long as the mistake is reasonable. 574 U.S. 54, 61 (2014). In *Heien*, an officer stopped a vehicle with only one working brake light, believing that the defendant had violated a North Carolina law requiring a "stop lamp." *Id*. at 58-59. The Supreme Court concluded that the

officer's error of law was reasonable because the relevant law also provided that a stop lamp "may be incorporated into a unit with one or more *other* rear lamps" and that "all originally equipped rear lamps [must be] in good working order." *Id.* at 67-68 (emphasis in original). Therefore, it was reasonable for the officer to conclude, pursuant to an *ambiguous* statute, that all brake lights on a vehicle must be functioning in order to satisfy the law. *Id.* at 68.

¶ 14    Defendant also cites *Eldridge*, which involves an officer who stopped a motorist driving a vehicle with out-of-state plates for failing to have an exterior mirror on the driver's side of the vehicle. 249 N.C. App. at 494, 790 S.E.2d at 741. Our Court concluded that the officer's mistake of law was unreasonable because the relevant law clearly stated that it only applied to vehicles "registered in this State." *Id.* at 499-500, 790 S.E.2d at 744 (citing N.C. Gen. Stat. § 20-126(b)). That is, we so concluded because the relevant law was unambiguous. *Id.* at 499, 790 S.E.2d at 744. We conclude that *Eldridge* is distinguishable from the case at bar for this reason.

¶ 15    Here, the relevant law was ambiguous at the time of Defendant's traffic stop. It is not clear from the statute exactly where the single month/year sticker should be placed, only that it be displayed as "prescribed by the Commissioner." Therefore, the officer relied on his quick reference guide and the information from the Commissioner on the back of the registration card to conclude that Defendant had violated Section 20-66(c), and there was reasonable suspicion to conduct the traffic stop on this

ground.  If the officer was mistaken, his mistake was reasonable.

### III. Conclusion

¶ 16      We conclude that the officer had reasonable suspicion that Defendant was in violation of Section 20-66(c).  Accordingly, we conclude that the trial court did not err in denying Defendant's motion to suppress.

AFFIRMED.

Chief Judge STROUD and Judge JACKSON concur.