McCULLOUGH, Judge.
 

 *664
 
 Calvin Lamar Adams ("defendant") appeals the denial of his motion to suppress following the entry of judgments on his convictions for driving while impaired ("DWI") and resisting a public officer. For the following reasons, we find no error.
 

 I.
 
 Background
 

 On 7 October 2011, defendant was arrested and citations were issued for driving while license revoked ("DWLR"), DWI, resisting a public officer, and possession of less than one-half ounce of marijuana. Officers then sought and obtained a search warrant for defendant's house, vehicle, and person. Defendant's vehicle was seized during the execution of
 
 *665
 
 the search warrant on 8 October 2011. On 10 October 2011, defendant successfully petitioned for the pretrial release of his vehicle pursuant to
 
 N.C. Gen. Stat. § 20-28
 
 (e2) on the ground that any period of license revocation had expired prior to the date of the alleged offense. In an order striking the storage fees for defendant's vehicle, the district court noted that defendant's vehicle was seized in error because, although the DMV system showed defendant's license was revoked from 27 July 2011, defendant's license was in fact active from 29 August 2011 when defendant paid the civil revocation fee, even though it was not sent to the DMV.
 

 After several motions to continue the matter, defendant's case came on for trial in Gaston County District Court before the Honorable Richard B. Abernathy. On 9 December 2014, the DWLR charge was dismissed, defendant was found not guilty of possession of marijuana, and defendant was found guilty of impaired driving and resisting a public officer. Defendant gave notice of appeal.
 

 Prior to his case coming on for trial in superior court, on 6 March 2015, defendant filed a motion to suppress all evidence obtained during and subsequent to his seizure on the bases that his seizure was unlawful, entry into his home was unlawful, and his arrest was unlawful-all in violation of defendant's constitutional rights. Defendant elaborated as follows: "[s]pecifically, law enforcement officers unlawfully seized [defendant] without the requisite reasonable suspicion and unlawfully entered his residence without a warrant or probable cause to arrest him. Moreover, those officers arrested him without probable cause."
 

 Defendant's motion to suppress came on for hearing in Gaston County Superior Court before the Honorable Todd Pomeroy on 22 April 2015. The evidence presented at the suppression hearing tended to show as follows: Gastonia Police Officer C. Singer was
 
 *359
 
 on routine patrol with Officer R. Ghant on 7 October 2011 when, at approximately 11:00 p.m., Officer Singer observed defendant driving a vehicle eastbound on Meade Avenue in the opposite direction the officers were traveling. Officer Singer was familiar with defendant and defendant's vehicle because he had stopped defendant and charged defendant with DWI on 27 July 2011, approximately three months prior. Officer Singer knew defendant's license had been suspended as a result of the July DWI and turned around to follow defendant in time to observe defendant pull into his driveway from Meade Avenue. Officer Singer then had Officer Ghant run defendant's tag and license information through DCI, which confirmed that defendant's license was revoked.
 
 *666
 
 Upon the belief that defendant was driving while his license was suspended, Officer Singer pulled into defendant's driveway directly behind defendant's vehicle and initiated a traffic stop by activating his blue lights. By the time Officer Singer activated his lights, defendant had exited from the driver's seat of his vehicle and was approximately 15-20 feet away from the front door of his residence, walking toward the front door. At that time, Officer Ghant instructed defendant to stop and to get back inside his car. Despite having a boot on one of his feet as the result of an injury, defendant picked up his pace toward the front door and Officer Singer advised him to stop running. Officer Ghant pursued defendant while Officer Singer grabbed the in-car camera mic. Defendant entered the front door and then attempted to close the front door on Officer Ghant. Officer Ghant was able to keep the front door from shutting and held the door open until Officer Singer arrived. The officers were then able to force the front door open and made physical contact with defendant just inside the front door. Officer Singer then patted defendant down for a safety check and found what he believed was a bag of marijuana in defendant's pocket. Defendant was arrested and charged with DWLR, possession of marijuana, and resisting a public officer. Further observation of defendant after his arrest led Officer Singer to believe defendant was impaired. Consequently, another officer was called to perform field sobriety tests. Defendant was then additionally charged with DWI.
 

 Following the evidence, defendant focused his argument for suppression on the officer's alleged illegal entry into defendant's residence. The State argued the officers were in hot pursuit. Upon consideration of the facts and arguments, the trial judge denied defendant's motion to suppress, concluding there was reasonable suspicion to stop defendant's vehicle for DWLR and probable cause to arrest for resisting a public officer once defendant ignored the blue lights and verbal commands to stop and entered his residence.
 

 Defendant's DWI and resisting a public officer charges came on for trial in Gaston County Superior Court before the Honorable Robert T. Sumner on 17 August 2015. Prior to jury selection, the trial court addressed additional pretrial matters. Upon consideration of those matters, the trial court overruled defendant's objection to the introduction of a chemical analyst's affidavit into evidence, granted defendant's motion to exclude mention of prior DWI and DWLR charges against defendant, and denied defendant's motion to exclude marijuana evidence. The defense then alerted the trial judge that defendant's motion to suppress had been denied and, consequently, the defense may object when certain evidence or testimony was introduced. The trial then proceeded.
 

 *667
 
 On 19 August 2015, the jury returned verdicts finding defendant guilty of DWI and resisting a public officer. The convictions were consolidated and an impaired driving judgment was entered. Defendant received a 60-day sentence that was suspended on condition that defendant serve 24 months of unsupervised probation. Defendant gave notice of appeal in open court.
 

 II.
 
 Discussion
 

 On appeal, defendant argues the trial court erred in denying his motion to suppress because the officers' entry into his residence to arrest him was unlawful. Thus, defendant contends all evidence of his impairment obtained as a result of the alleged unlawful entry was tainted and must be suppressed.
 

 *360
 
 Yet, as an initial matter, we address the State's contention that defendant waived the argument now asserted on appeal. It has long been the rule that "[i]n order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent."
 
 State v. Eason
 
 ,
 
 328 N.C. 409
 
 , 420,
 
 402 S.E.2d 809
 
 , 814 (1991) ;
 
 see also
 
 N.C. R. App. P. 10(a)(1) (2015). In this case, the State contends defendant waived his argument on appeal by failing to include the precise argument on appeal in his pretrial motion to suppress and by failing to object when evidence of his impairment was introduced at trial. We disagree that defendant failed to adequately include the argument on appeal in his pretrial motion, but agree that defendant failed to object to evidence offered at trial.
 

 N.C. Gen. Stat. § 15A-977 governs motions to suppress evidence in superior court and provides, in pertinent part, that "[a] motion to suppress evidence in [S]uperior [C]ourt made before trial must be in writing and ... must state the grounds upon which it is made." N.C. Gen. Stat. § 15A-977(a) (2015). The State asserts that the only grounds for suppression identified by defendant in the pretrial motion were that there was no reasonable suspicion for the initial stop of defendant and there was no probable cause to believe defendant was involved in criminal activity. The State then contends that defendant abandoned those two grounds during the suppression hearing and argued only that there were no exigent circumstances warranting hot pursuit. The State contends the lack of exigent circumstances is the argument now asserted on appeal and that it was not contained in defendant's pretrial motion to suppress. We are not convinced. It is clear from defendant's motion that defendant asserts there was an unlawful entry into his residence to arrest
 
 *668
 
 him "without a warrant and without exigent circumstances." While the motion does not mention "hot pursuit," the motion was sufficient to preserve the issue now on appeal.
 

 Concerning preservation of the issues at trial, "[t]he law in this State is now well settled that 'a trial court's evidentiary ruling on a pretrial motion [to suppress] is not sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial.' "
 
 State v. Hargett
 
 , --- N.C. App. ----, ----,
 
 772 S.E.2d 115
 
 , 119 (2015) (quoting
 
 State v. Oglesby
 
 ,
 
 361 N.C. 550
 
 , 554,
 
 648 S.E.2d 819
 
 , 821 (2007) (citations omitted; emphasis in original)). In defendant's motion, defendant sought to suppress all evidence obtained subsequent to the officers' entry into defendant's residence to arrest defendant. As indicated above, all evidence of impairment necessary to prove the DWI charge was obtained after defendant was arrested. It is evident defense counsel was aware of the need to renew objections to the evidence at trial as defense counsel informed the judge prior to jury selection that defendant's motion to suppress had been denied and, consequently, the defense may object when certain evidence or testimony was introduced. Defense counsel, however, failed to do so when evidence of impairment was admitted at trial. Specifically, Officer Singer testified that after defendant was detained, he noticed defendant had slurred speech and bloodshot eyes. Officer Singer also testified that he found an empty bottle of hydrocodone and a bag of what he believed to be marijuana in defendant's pocket. Officer Ewers, who was called to perform field sobriety tests on defendant, testified that defendant appeared lethargic, defendant's eyelids were droopy, and defendant's eyes were bloodshot. Officer Ewers then explained that defendant had trouble following directions during a horizontal gaze nystagmus test, leading him to believe defendant was impaired. Linda Farren, a forensic scientist supervisor with the State Crime Laboratory who was admitted as an expert in forensic toxicology, testified that defendant's blood samples tested positive for benzodiazepines, specifically alprazolam or Xanax, and cannabinoids. The chemical analyst's report was then admitted into evidence without objection. Defendant does not dispute that the above evidence of impairment was admitted without objection, but instead points out that defense counsel objected when the State sought to admit the bag of marijuana found on defendant as State's Exhibit 1. Defendant contends it is
 
 *361
 
 clear from the "object[ion] on the Fourteenth Amendment" that defense counsel intended to preserve the suppression motion and "it would be wrong to assume [defendant] intended to waive his objection[.]" We disagree. Defendant's objection to the marijuana evidence does not preserve for appellate review the admissibility
 
 *669
 
 of all evidence of impairment obtained following defendant's arrest. In fact, despite defendant's objection to the admission of the bag of marijuana, other evidence of defendant's possession of the marijuana was introduced into evidence without objection.
 
 See
 

 State v. Alford
 
 ,
 
 339 N.C. 562
 
 , 570,
 
 453 S.E.2d 512
 
 , 516 (1995) ("Where evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost."). By failing to object to the other evidence obtained subsequent to his arrest, defendant waived review.
 

 Defendant, however, seeks to have this Court invoke Rule 2 of the North Carolina Rules of Appellate Procedure to review the merits of his case if his arguments are not otherwise preserved. That rule allows this Court to "suspend or vary the requirements or provisions of any of [the appellate rules] in a case pending before it upon application of a party or upon its own initiative[ ]" in order to prevent manifest injustice to a party. N.C. R. App. P. 2 (2016). In our discretion, we invoke Rule 2 and reach the merits of this case.
 

 Generally, our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982). "When findings of fact are not challenged on appeal, 'such findings are presumed to be supported by competent evidence and are binding on appeal.' "
 
 State v. Washington
 
 ,
 
 193 N.C.App. 670
 
 , 672,
 
 668 S.E.2d 622
 
 , 624 (2008) (quoting
 
 State v. Baker
 
 ,
 
 312 N.C. 34
 
 , 37,
 
 320 S.E.2d 670
 
 , 673 (1984) (internal quotation marks omitted)),
 
 disc. review denied
 
 ,
 
 363 N.C. 138
 
 ,
 
 674 S.E.2d 420
 
 (2009). "The trial court's conclusions of law ... are fully reviewable on appeal."
 
 State v. Hughes
 
 ,
 
 353 N.C. 200
 
 , 208,
 
 539 S.E.2d 625
 
 , 631 (2000). " '[T]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found.' "
 
 State v. Golphin
 
 ,
 
 352 N.C. 364
 
 , 409,
 
 533 S.E.2d 168
 
 , 201 (2000) (quoting
 
 State v. Fernandez
 
 ,
 
 346 N.C. 1
 
 , 11,
 
 484 S.E.2d 350
 
 , 357 (1997) ),
 
 cert. denied
 
 ,
 
 532 U.S. 931
 
 ,
 
 121 S.Ct. 1379
 
 , 1380,
 
 149 L. Ed. 2d 305
 
 (2001).
 

 However, because there was no objection to the evidence below, defendant asserts the proper standard of review in the present case upon invoking Rule 2 is plain error.
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To
 
 *670
 
 show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal quotation marks and citations omitted).
 

 While we agree plain error review is proper, it makes no difference in this case because if the trial court erred in denying defendant's motion to suppress, it is certain that the error was fundamental because there would be no evidence of impairment to support the DWI charge if defendant's motion to suppress had been allowed. Thus, in the present case, where there is no dispute as to the relevant facts, we address only the application of search and seizure law.
 

 "Both the United States and North Carolina Constitutions protect against unreasonable searches and seizures."
 
 State v. Otto
 
 ,
 
 366 N.C. 134
 
 , 136,
 
 726 S.E.2d 824
 
 , 827 (2012) (citing U.S. Const. amend. IV ; N.C. Const. art. I, § 20 ). The Supreme Court has emphasized that "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' "
 
 Welsh v. Wisconsin
 
 ,
 
 466 U.S. 740
 
 , 748,
 
 104 S.Ct. 2091
 
 , 2097,
 
 80 L.Ed.2d 732
 
 , 742 (1984) (quoting
 
 *362
 

 United States v. United States District Court
 
 ,
 
 407 U.S. 297
 
 , 313,
 
 92 S.Ct. 2125
 
 ,
 
 32 L.Ed.2d 752
 
 (1972) ). Therefore, "the Court has recognized, as 'a "basic principle of Fourth Amendment law[,]" that searches and seizures inside a home without a warrant are presumptively unreasonable.' "
 
 Id
 
 . at 749,
 
 104 S.Ct. at 2097
 
 ,
 
 80 L.Ed.2d at 742
 
 (quoting
 
 Payton v. New York
 
 ,
 
 445 U.S. 573
 
 , 586,
 
 100 S.Ct. 1371
 
 ,
 
 63 L.Ed.2d 639
 
 (1980) ). Yet, there are exceptions to the warrant requirement, which the Court has noted are "few in number and carefully delineated."
 
 Id
 
 . at 749,
 
 104 S.Ct. at 2097
 
 ,
 
 80 L.Ed.2d at 743
 
 (citation omitted). A warrantless arrest in the home may be reasonable where there is probable cause and exigent circumstances.
 
 Id
 
 . (citing
 
 Payton
 
 ,
 
 445 U.S. at 583-90
 
 ,
 
 100 S.Ct. 1371
 
 ,
 
 63 L.Ed.2d 639
 
 ).
 

 With respect to exigent circumstances, this Court has explained: Exigent circumstances exist when there is [a] situation that demands unusual or immediate action and that may allow people to circumvent usual procedures.... The United States Supreme Court has approved the following exigent circumstances justifying warrantless searches and seizures: (1) where law enforcement officers are in "hot pursuit" of a suspect; (2) where there is immediate and present danger to the public or to law enforcement officers; (3) where destruction of evidence is imminent;
 

 *671
 
 and (4) where the gravity of the offense for which the suspect is arrested is high.
 

 State v. Jordan
 
 , --- N.C. App. ----, ----,
 
 776 S.E.2d 515
 
 , 519 (internal quotation marks and citations omitted),
 
 disc. review denied
 
 ,
 
 368 N.C. 358
 
 ,
 
 778 S.E.2d 85
 
 (2015). "A determination of whether exigent circumstances are present must be based on the 'totality of the circumstances.' "
 
 State v. Nowell
 
 ,
 
 144 N.C.App. 636
 
 , 643,
 
 550 S.E.2d 807
 
 , 812 (2001),
 
 aff'd per curiam
 
 ,
 
 355 N.C. 273
 
 ,
 
 559 S.E.2d 787
 
 (2002).
 

 Defendant now contends there were no exigent circumstances warranting entry into defendant's home to arrest defendant. We disagree.
 

 It is undisputed that the officers had reasonable suspicion to initiate an investigatory stop of defendant for DWLR when they pulled into defendant's driveway behind him and activated the blue patrol car lights as defendant was exiting his vehicle and making his way toward his front door. Defendant did not stop for the blue lights and then continued hurriedly toward the front door after the officers told defendant to stop. At that point, the officers had probable cause to arrest defendant for resisting a public officer and began a "hot pursuit" of defendant, one of the exigent circumstances delineated by the courts. The officers arrived at the front door of defendant's residence just as defendant made his way across the threshold and were able to prevent defendant from closing the door. Officers then forced the front door open and detained and arrested defendant just inside the front door. We hold such warrantless entry and arrest was proper under
 
 United States v. Santana
 
 ,
 
 427 U.S. 38
 
 ,
 
 96 S.Ct. 2406
 
 ,
 
 49 L.Ed.2d 300
 
 (1976).
 

 In
 
 Santana
 
 , the Supreme Court addressed whether hot pursuit justified the warrantless entry into the home of a defendant to arrest that defendant when the defendant retreated from the threshold of the house into the vestibule upon the arrival of the police. Relying on
 
 United States v. Watson
 
 ,
 
 423 U.S. 411
 
 ,
 
 96 S.Ct. 820
 
 ,
 
 46 L.Ed.2d 598
 
 (1976) (a warrantless arrest of an individual in a public place upon probable cause did not violate the Fourth Amendment), the Court first held that the defendant was in a public place for purposes of Fourth Amendment jurisprudence while standing in the doorway to the house because she was not in an area where she had any expectation of privacy.
 
 Santana
 
 ,
 
 427 U.S. at 42
 
 , 96 S.Ct. at 2409,
 
 49 L.Ed.2d at 305
 
 . Relying on
 
 Warden v. Hayden
 
 ,
 
 387 U.S. 294
 
 ,
 
 87 S.Ct. 1642
 
 ,
 
 18 L.Ed.2d 782
 
 (1967) (police, who had probable cause to believe that an armed robber had entered a house a few minutes before, had the right to make a warrantless entry to arrest the robber and to search for weapons), the Court then held that "a suspect may not defeat an arrest which has been
 
 *672
 
 set in motion in a public place, and is therefore proper under
 
 Watson
 
 , by the expedient of escaping to a private place."
 
 Santana
 
 ,
 
 427 U.S. at 43
 
 , 96 S.Ct. at 2410,
 
 49 L.Ed.2d at 306
 
 .
 

 In the present case, defendant does not argue the officers were not in hot pursuit, but instead contends the officers' entry into
 
 *363
 
 defendant's residence was unreasonable because there was no threat of violence, no evidence subject to destruction, and no likelihood of defendant fleeing his own home to elude detection. Defendant's assertions, however, fail to recognize that defendant was considered fleeing when he failed to stop upon the activation of the blue lights and the officers' commands to stop. As the Court recognized in
 
 Santana
 
 , "[t]he fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into [defendant's] house."
 
 Id
 
 . at 43, 96 S.Ct. at 2410,
 
 49 L.Ed.2d at 305
 
 . Moreover, defendant conflates the exigent circumstances recognized by this Court in
 
 Jordan
 
 . While the Court in
 
 Santana
 
 did note that "[o]nce [the defendant] saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence[,]"
 

 id.
 

 that observation was separate and apart from the hot pursuit justification for the warrantless entry and arrest. Hot pursuit has been recognized as an exigent circumstance sufficient to justify a warrantless entry and arrest when there is probable cause without consideration of immediate danger or destruction of evidence.
 

 Defendant also argues the officers' decision to engage in hot pursuit was unreasonable. Defendant cites
 
 State v. Johnson
 
 ,
 
 64 N.C.App. 256
 
 ,
 
 307 S.E.2d 188
 
 (1983), for the proposition that the reasonableness of hot pursuit is based on the presence of exigent circumstances before the chase begins. Upon review, it is clear
 
 Johnson
 
 is not instructive here.
 

 In
 
 Johnson
 
 , officers obtained arrest warrants for two individuals believed to be located at the defendant's residence, went to the defendant's residence to serve the arrest warrants, and, upon arrival, chased an individual falsely believed to be identified in one of the arrest warrants into the defendant's residence, whereupon the officers discovered controlled substances.
 
 Johnson
 
 ,
 
 64 N.C.App. at 258-59
 
 ,
 
 307 S.E.2d at 189-90
 
 . Upon review of the trial court's denial of the defendant's motion to suppress, this Court reversed, holding that "no exigent circumstances existed that would justify the warrantless entry into [the] defendant's house and the later seizure of the evidence which [the] defendant seeks to suppress."
 
 Id
 
 . at 264,
 
 307 S.E.2d at 193
 
 . In so holding, this Court acknowledged that the State relied on hot pursuit to justify the warrantless entry, but explained that "[i]n so doing, the State seeks to focus [the Court's] attention on events that occurred after the point in time
 
 *673
 
 when a judgment as to whether a search warrant was required should already have been made."
 
 Id
 
 . at 262,
 
 307 S.E.2d at 191
 
 . This Court pointed out that over three and a half hours elapsed between when officers received the arrest warrants and when they attempted to execute the warrants, noting there was ample time to get a search warrant.
 
 Id
 
 . at 263,
 
 307 S.E.2d at 192
 
 . This Court then specifically noted that it "need not consider whether [the officer] was in 'hot pursuit' and whether that alone was sufficient to justify his entry into [the] defendant's home. The need for a search warrant should have been anticipated in this case."
 
 Id
 
 . Upon further appeal to our Supreme Court, the Court took issue with this Court's conclusions because the evidence and findings of fact were insufficient to support this Court's conclusions that "it would appear that the arrest raid was in fact a planned raid[,]" "there was ample time to secure a search warrant and ample reason to anticipate the need for one[,]" and "the need for a search warrant should have been anticipated in this case."
 
 State v. Johnson
 
 ,
 
 310 N.C. 581
 
 , 587-88,
 
 313 S.E.2d 580
 
 , 584 (1984) (internal citations and alterations in original omitted). Thus, the Court remanded the case for new
 
 voir dire
 
 proceedings.
 
 Id
 
 . at 589,
 
 313 S.E.2d at 584-85
 
 . The Court did, however, reemphasize the issue of hot pursuit was not determinative in the case, explaining that
 

 while in this case, it is evident that, at the time of entry into defendant's home, [the officer] was engaged in the "hot pursuit" of a person he suspected to be a fugitive, the issue remains as to whether there was an unjustified delay or failure to obtain a search warrant after the existence of probable cause as to the whereabouts of the suspects.
 

 Id
 
 . at 586,
 
 313 S.E.2d at 583
 
 .
 

 Similarly, other cases relied on by defendant, such as
 
 *364
 

 Welsh
 
 ,
 
 466 U.S. 740
 
 ,
 
 104 S.Ct. 2091
 
 ,
 
 80 L.Ed.2d 732
 
 (warrantless entry into the defendant's home to arrest him for a noncriminal traffic offense was unconstitutional), which defendant cites for the holding "that an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made[,]"
 
 id
 
 . at 753,
 
 104 S.Ct. at 753
 
 ,
 
 80 L.Ed.2d at 745
 
 , are not instructive because they do not involve hot pursuit.
 
 See
 

 id
 
 . (noting "the claim of hot pursuit is unconvincing because there was no immediate or continuous pursuit of the petitioner").
 

 As described above, in this case, the officers initiated an investigatory stop for DWLR in front of defendant's residence and then pursued defendant into his residence to arrest him for resisting a public officer when he did not obey their orders to stop. By definition, this was hot pursuit.
 

 *674
 
 III.
 
 Conclusion
 

 For the reasons discussed, we invoke Rule 2 to reach the merits of defendant's argument and hold there was no error below.
 

 NO ERROR.
 

 Judges STEPHENS and ZACHARY concur.